**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LYNELLE MAXINE FORSHEE,

    *Plaintiff*,

v.

COMMISSIONER OF SOCIAL SECURITY,

    *Defendant*.
    _____/

CASE NO. 11-CV-12339

DISTRICT JUDGE LAWRENCE P. ZATKOFF
MAGISTRATE JUDGE CHARLES E. BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.   RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.   REPORT

#### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability and disability insurance benefits ("DIB"). This matter is currently before the Court on cross-motions for summary judgment. (Docs. 9, 11.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 5 at 24, 94.) Plaintiff's employment history includes work as an advertising clerk,

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

telephone salesperson, and bookkeeper. (Tr. at 122.) Plaintiff filed the instant claim on April 11, 2007, alleging that she became unable to work on May 11, 2004. (Tr. at 94.) The claim was denied at the initial administrative stages. (Tr. at 49.) In denying Plaintiff's claims, the Commissioner considered "COPD - Chronic Pulm - Insuff" as a possible basis for disability. (*Id.*) On August 20, 2009, Plaintiff appeared before Administrative Law Judge ("ALJ") Gregory Hamel, who considered the application for benefits *de novo*. (Tr. at 10-22, 24-48.) In an undated decision, the ALJ found that Plaintiff was not disabled. (Tr. at 22.) Plaintiff requested a review of this decision. (Tr. at 5.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), when, on March 22, 2011, the Appeals Council denied Plaintiff's request for review. (Tr. at 1-4.) On May 26, 2011, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by

substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes

that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

4

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had met the insured status requirements on December 31, 2006, and had not engaged in substantial gainful activity from her alleged onset date of May 11, 2004, through her date last insured of December 31, 2006. (Tr. at 15.) At step two, the ALJ found that Plaintiff's sinusitis and asthma were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 16.) At step four, the ALJ found that Plaintiff was able to perform her past relevant work as an advertising clerk, telephone sales and bookkeeper. (Tr. at 18.) Alternatively, at step five, the ALJ found that Plaintiff retained the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 19.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that on June 18, 2004, a chest x-ray interpreted by Charles E. Mueller, M.D., showed "chronic obstructive pulmonary disease, which looks to be moderately advanced, with no evidence of active inflammatory process in the chest at this time." (Tr. at 210.)

On July 16, 2004, Khaled M. Shukairy, M.D., evaluated Plaintiff regarding her chronic laryngitis with intermittent loss of voice and difficulty swallowing. (Tr. at 157-58, 226-27.) Dr. Shukairy suspected bilateral vocal cord polyps, lingual tonsilitis and sinusitis and he ordered a CT scan and a course of Amoxil. On July 19, 2004, a CT maxillofacial scan showed "[m]ild chronic maxillary sinusitis with involvement of the left osteomeatal complex. No acute abnormality." (Tr. at 156, 231.) Dr. Shukairy then opined that Plaintiff had bilateral vocal cord polyps and chronic sinusitis so he ordered a "course of Diflucan and surgery to include sinus endoscopy and vocal cord polypectomy." (Tr. at 158, 225.) After surgery on August 24, 2004, Dr. Shukairy's diagnosis remained the same. (Tr. at 159-61, 228-30.) On November 8, 2004, Dr. Shukairy performed a

fiberoptic nasopharyngolaryngoscopy, which showed "mild" inflammation of the nasopharynx but was otherwise normal. (Tr. at 167, 222, 232.) On that same date, Dr. Shukairy recommended "voice rest, eliminate smoking, and reevaluation in three months." (Tr. at 164, 223.) On February 23, 2005, Dr. Shukairy noted rhinosinusitis and recommended a "course of Zpak and Deconamine with reevaluation in three months." (Tr. at 165, 219.) On May 25, 2005, Dr. Shukairy diagnosed rhinosinusitis and recommend a "course of Amoxil and Allegra D." (Tr. at 166, 215.)

On December 7, 2006, Plaintiff was examined by David B. Krebs, M.D., for decreased distance vision and he diagnosed presbyopia with hyperopia and blepharitis and he prescribed eye glasses. (Tr. at 213.)

After the expiration of her insured status, a Request for Medical Advice completed on May 1, 2007, concluded that Plaintiff's impairment was "non-severe as opposed to insufficient evidence" and recommended that a Residual Functional Capacity ("RFC") assessment be completed. (Tr. at 251.)

On June 20, 2007, Siva Sankaran, M.D., examined Plaintiff and concluded that she had "chronic bronchitis and asthma, diagnosed in 2003," and stated that her "[p]ulmonary function test show[ed] moderate obstructive airway disease." (Tr. at 255.) On July 2, 2007, a Case Analysis concluded that Dr. Sankaran's consultative examination was "consistent with COPD" and that it was "not likely to meet listing level." (Tr. at 261.)

A Physical RFC Assessment completed on July 2, 2007, by Eric Vanderhaagen, D.O., concluded that Plaintiff was able to occasionally lift 10 pounds, frequently lift less than 10 pounds, stand or walk for at least 2 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and was unlimited in her ability to push or pull. (Tr. at 264.) The assessment also concluded that Plaintiff was occasionally limited in all postural areas except that she should never climb ladders, ropes, or scaffolds. (Tr. at 265.) There were no manipulative, visual, or communicative limitations established. (Tr. at 267.) As to environmental limitations, the assessment concluded that Plaintiff should avoid even moderate exposure to humidity and fumes, odors, dust, gases or poor

ventilation. (Tr. at 267.) The assessment found Plaintiff's statements to be "partially credible." (Tr. at 270.)

On October 2, 2007, a pulmonary function test performed by Dr. Ansari showed "[s]evere obstructive lung disease with hyperinflation[,] [i]ncreased airway resistance[,] [and] [s]everely reduced diffusion capacity." (Tr. at 280.) Dr. Ansari added that, "[b]ased on patient's pulmonary function test and her respiratory status, she will qualify for disability." (*Id.*)

On October 3, 2007, Farhan Ansari, M.D., examined Plaintiff and diagnosed severe emphysema and cechexia. (Tr. at 275.)

On April 15, 2008, a Pulmonary Function Test performed by Dr. Ansari was "consistent with the diagnosis of severe emphysema with a significant reversible component." (Tr. at 277.)

On May 7, 2008, chest x-rays interpreted by Charles E. Mueller, M.D., revealed "moderate chronic obstructive pulmonary disease," but Dr. Mueller found that "no evidence of active pulmonary disease or neoplasm [was] seen in the chest on this study." (Tr. at 276.)

On November 1, 2008, Dr. Ansari diagnosed Plaintiff with severe emphysema, cechexia, and Reynaud's phenomenon. (Tr. at 272.)

The Janes Street Clinic prepared a Medical Source Statement on July 15, 2009, opining that Plaintiff could lift 10 pounds occasionally, less than 10 pounds frequently, stand for 2 hours and sit for 6 hours in an 8-hour day, and that she was mildly restricted in her ability to push or pull. (Tr. at 293.) It also concluded Plaintiff was unable to work. (*Id.*)

A Medical Source Statement completed by Dr. Ansari on July 21, 2009, concluded that Plaintiff could occasionally lift less than 10 pounds, frequently lift less than 10 pounds, stand or walk for less than 2 hours in an 8-hour workday and sit less than six hours in an 8-hour day, and was severely limited in her ability to push or pull. (Tr. at 294.) Dr. Ansari indicated Plaintiff was "physically very restricted." (*Id.*) Dr. Ansari opined that her limitations would disrupt a regular job schedule for 40 hours out of 160 hours in one month. (*Id.*)

In her daily activity report, Plaintiff indicated that she is generally able to care for her own personal needs, that she cooks, and that she can "sometimes" do laundry, iron, vacuum, clean the sink and toilet, and do dishes. (Tr. at 133-34.) She also indicated that she can ride in and drive a car, grocery shop for two to two-and-a-half hours, handle finances, talk on the phone, talk in person, go to dinner, and go to church. (Tr. at 135-36.)

Plaintiff testified at the administrative hearing that she stopped working because she "was just no longer really able to do it. I was so tired all the time, you know, and missing deadlines, and being able to pick up some of the boxes of the reams of paper, and different things like that." (Tr. at 30.) When asked what keeps her from working, Plaintiff indicated that she "can maybe take a couple of steps before I can't breathe, and that's pretty much what does it . . . the breathing is what holds me back." (Tr. at 35.) Plaintiff takes prescription medication and uses an inhaler. (*Id.*) Plaintiff testified that her breathing is worse in the cold air and in humidity, and that she feels best in a reclined position. (Tr. at 38.) Plaintiff also takes a "couple of naps a day" because she is "so tired, exhausted, and tired" and because she does not sleep at night due to the fact that she "cough[s] so much." (Tr. at 39.)

Plaintiff stated that she lives with her 83-year-old mother, watches birds, prepares meals, does the laundry and dishes with her mother, but that her niece does the housework. (Tr. at 31-32.) Plaintiff stated that she does not do any yard work and that she does not grocery shop; her mother does the shopping alone and drives herself. (Tr. at 33-34.) However, Plaintiff does have a driver's license and she testified that she had driven within the last week. (Tr. at 34.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background who:

> cannot be exposed to, and let's just say moderate or greater amounts of fumes, odors, dusts, and gases. Now I know it is hard to pin down what I mean by moderate. I'm guess I'm saying that this hypothetical individual can be exposed to some degree of those items. But as we move out of the kitchen, and the home environment, and move into some settings where there might be a greater degree of those irritants that this hypothetical individual should avoid those, and the same with respect to avoiding humidity. And let's also assume that this person can only on an occasional

9

> basis do the typical postural activities like climbing stairs, balancing, stooping, kneeling, and so forth, and shouldn't do any type of hazardous climbing.

(Tr. at 44.) The VE responded that such a person could perform Plaintiff's past relevant work, which was light work as Plaintiff described it, and sedentary work as the "Dictionary of Occupational Titles ("DOT") would classify it. (Tr. at 45.) The VE also responded that if such a person needed to go off task four of five times a day, such person could not perform any jobs. (Tr. at 45-46.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ found that Plaintiff was able to perform her past relevant work as an advertising clerk, telephone salesperson and bookkeeper. (Tr. at 18.) The Commissioner's regulations state that the agency "will first compare our assessment of your residual functional capacity with the physical and mental demands of your past relevant work." 20 C.F.R. § 416.960(b); 20 C.F.R. §404.1560(b). "If you can still do this kind of work, we will find that you are not disabled." 20 C.F.R. § 404.1520(f); 20 C.F.R. § 404.1560(b)(3). "'By referring to the claimant's ability to perform a "kind" of work, [the regulations] concentrate[] on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it.'" *Boucher v. Apfel*, 2000 WL 1769520, at *7 (6th Cir. Nov. 15, 2000) (quoting *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995)).

An "ALJ [is] not required to solicit testimony from a VE in reaching his conclusion" that a plaintiff is able to perform her past relevant work. *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010) (citing 20 C.F.R. § 404.1560(b)(2) ("We *may* use the service of vocational experts . . . to help us determine whether you can do your past relevant work[.]") (emphasis in original); *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) ("The regulations permit an ALJ to use the services of a vocational expert at step four to determine whether a claimant can do his past relevant work . . . .")). Should the ALJ use the services of a VE, the ALJ need only incorporate those limitations into the hypothetical question that he finds credible

10

and supported by the record. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

Alternatively, the ALJ determined that during the time Plaintiff qualified for benefits, she retained the residual functional capacity to perform a limited range of light work. (Tr. at 16-18.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2. Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 9.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

In order to be eligible for disability benefits, a person must become disabled during the period in which he or she has met the statutory special earnings requirements. 42 U.S.C. §§ 416(I), 423 (d)(1)(A). It is improper for an administrative law judge to concentrate on a claimant's abilities and condition at the date of hearing, rather than during the time period when the plaintiff met the special earnings' requirements. *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979). *See also Mohr v. Bowen*, No. 87-1534, 1988 WL 35265, at *2 (6th Cir. April 21, 1988). In this circuit, to qualify for

social security disability benefits, disability must be proven to exist during the time the plaintiff was insured within the meaning of the special insured status requirements of the Act; if the plaintiff becomes disabled after the loss of insured status, the claim must be denied even though the plaintiff has indeed become disabled. *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990); *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Demandre v. Califano*, 591 F.2d 1088 (5th Cir. 1979). Thus, as a general rule, the only medical evidence relevant to the issue of disability is that medical evidence dealing with a claimant's condition during the period of insured status.

In *Begley v. Mathews*, 544 F.2d 1345 (6th Cir. 1976), the court held, however, that "[m]edical evidence of a subsequent condition of health, reasonably proximate to a preceding time, may be used to establish the existence of the same condition at the preceding time." *Id*. at 1354. Federal courts have therefore held that "medical evidence that postdates the insured status may be, and ought to be, considered insofar as it bears on the claimant's condition prior to the expiration of insured status." *Anderson v. Comm'r of Social Security,* 440 F. Supp. 2d 696, 699 (E.D. Mich. 2006) (citing *Estep v. Weinberger*, 525 F.2d 757 (6th Cir. 1975); *Davis v. Califano*, 616 F.2d 348 (8th Cir. 1979) and *Begley*, 544 F.2d at 1354).

In the instant case, the last date Plaintiff was insured was December 31, 2006. (Tr. at 15.) Although the ALJ found the assessments after her date last insured were "in sharp contrast" to the evidence before her date last insured (Tr. at 16), Plaintiff contends that "it is pretty clear that Ms. Forshee's pulmonary condition was just as severe in 2004 as it was after her date last insured of December 2006." (Doc. 9 at 8.) I suggest that substantial evidence supports the ALJ's findings and that Plaintiff's argument is based on mere conjecture.

The medical evidence prior to December 31, 2006, revealed "chronic obstructive pulmonary disease, which looks to be moderately advanced, with no evidence of active inflammatory process in the chest at this time." (Tr. at 210.) In addition, tests revealed "[m]ild chronic maxillary sinusitis with involvement of the left osteomeatal complex" with "[n]o acute abnormality." (Tr. at 156,

231.) Plaintiff's treatment regimen was modest and none of her physicians opined that she was limited in her ability to work at all. I suggest that substantial evidence supports the ALJ's finding that Plaintiff was not disabled prior to December 31, 2006. *See Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 334-35 (6th Cir. 2007) (modest treatment regimen is inconsistent with a finding of total disability).

As noted by the ALJ, the medical evidence after December 31, 2006 showed significant deterioration in Plaintiff's condition. In early 2007, pulmonary function tests showed "moderate obstructive airway disease" that was "consistent with COPD" although it was "not likely to meet listing level." (Tr. at 255, 261.) This is the only evidence that would arguably be at all "proximate" to the date last insured and I suggest that it does not undermine the ALJ's conclusion that Plaintiff was not disabled as of the date last insured. *See Begley, supra.* By late 2007, pulmonary function tests showed "[s]evere obstructive lung disease with hyperinflation[,] [i]ncreased airway resistance[,] [and] [s]everely reduced diffusion capacity." (Tr. at 280.) On April 15, 2008, a pulmonary function test was "consistent with the diagnosis of severe emphysema . . . ." (Tr. at 277.) By May 7, 2008, chest x-rays revealed "moderate chronic obstructive pulmonary disease [but] no evidence of active pulmonary disease." (Tr. at 276.) By July 2009, two medical source statements concluded that Plaintiff was unable to work. (Tr. at 293, 294.)

Although Plaintiff may be able to show that her condition deteriorated to the disabling point sometime in 2008 or 2009, I suggest that ALJ properly concluded that she has not shown adequate evidence of any disabling conditions or combination of conditions during the time she was eligible for benefits.

I further suggest that Plaintiff's own descriptions of her abilities follow a similar pattern and further support the ALJ's conclusion. When Plaintiff filled out her daily activity report during the application process, she indicated that she was generally able to care for her own personal needs, cook, and can "sometimes" do laundry, iron, vacuum, clean the sink and toilet, and do dishes. (Tr. at 133-34.) She also indicated that she could ride in and drive a car, grocery shop for two to two-

and-a-half hours, handle finances, talk on the phone, talk in person, go to dinner, and go to church. (Tr. at 135-36.) At the administrative hearing, however, she testified that she "can maybe take a couple of steps before [she] can't breathe" and that "the breathing is what holds me back." (Tr. at 35.)

Thus, after review of the administrative record, I suggest that the ALJ's finding that Plaintiff's condition during the time she was eligible for benefits was not disabling is supported by substantial evidence.

### 3.     Conclusion

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| Dated: April 11, 2012 | s/ Charles E Binder<br>CHARLES E. BINDER<br>United States Magistrate Judge |

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Mikel Lupisella and Laura Sagolla; and served on District Judge Zatkoff in the traditional manner.

Date:  April 11, 2012                           By      s/*Jean L. Broucek*
                                                                    Case Manager to Magistrate Judge Binder

15